**ORIGINAL**

1   Timothy P. Dillon (CSB No. 123953)
    LAW OFFICES OF
2   TIMOTHY P. DILLON
    361 Forest Avenue, Suite 205
3   Laguna Beach, California 92651
    (949) 376-2800
4   (949) 376-2808 Facsimile
    timothy@dillonlaw.net
5

6   Attorneys for Plaintiffs
    Juan Rodriguez and Josefina Rodriguez
7



FILED
CLERK, U.S. DISTRICT COURT

OCT 18 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12                                    C V07-6780 CAS (AJWx)

13   JUAN RODRIGUEZ and JOSEFINA          Case No.
     RODRIGUEZ, individually, and on the
14   class of all others similarly situated,   **COMPLAINT**

15              Plaintiffs,               CLASS ACTION

16        v.                             1.   Violations of the Equal Credit
                                              Opportunity Act; 15 U.S.C. § 1691
17   WELLS FARGO BANK, N.A.,
                                         2.   Violations of the Fair Housing
18              Defendant.                     Act; 42 U.S.C. § 3601

19                                       3.   Violations of the Civil Rights Act,
                                              42 U.S.C. §1981; and
20
                                         4.   Violations of the Civil Rights Act,
21                                            42 U.S.C. §1982.

22

23                                       

24                                       DOCKETED ON CM

25                                       OCT 29 2007

26                                       BY              067

27

28

1      1.     Jurisdiction is based on 28 U.S.C. section 1331 as an action arising
2  under federal law.

3      2.     For their Complaint, Plaintiffs Juan Rodriguez and Josefina Rodriguez
4  ("Plaintiffs") bring this class action against Wells Fargo Bank, N.A. ("Wells
5  Fargo" or "Defendant") to redress racially discriminatory lending practices under
6  the Equal Credit Opportunity Act, 15 U.S.C. section 1691, *et seq.* ("ECOA"), the
7  Fair Housing Act, 42 U.S.C. section 3601 *et seq.* ("FHA"), and the Civil Rights
8  Act, 42 U.S.C. sections 1981 and 1982, on behalf of themselves and all others
9  similarly situated.

10  <div align="center">INTRODUCTION</div>

11      3.     This action is based on the racially discriminatory mortgage lending
12  practices of Wells Fargo. Through its development and implementation of
13  mortgage pricing policies and procedures, Wells Fargo has engaged in both
14  intentional and disparate impact discrimination against minorities. Wells Fargo
15  does so by providing financial incentives to its authorized loan officers, mortgage
16  brokers and correspondent lenders thereby encouraging them to make subjective
17  decisions to increase interest rates and charge additional fees and costs to minority
18  borrowers.

19      4.     With substantial financial incentives made available by Wells Fargo
20  to motivate them, Wells Fargo's authorized loan officers, mortgage brokers and
21  correspondent lenders are given the discretion and thereby are actually encouraged,
22  to increase interest rates and charge additional fees to certain borrowers as set forth
23  in this Complaint. These policies directly lead to minorities receiving home loans
24  with higher interest rates and higher fees and costs than similarly situated non-
25  minority borrowers. By design of Wells Fargo, loan pricing policy discriminates
26  against minority borrowers.

27      5.     As used in this Complaint, "minority" or "minorities" shall refer to all
28  non-Caucasians and other minority racial groups protected under 42 U.S.C.

1 | sections 1981, 1982, and 3604, and 15 U.S.C. section 1691.

2 |      6.    As set forth in more detail in the "Class Allegations" below, Plaintiffs
3 | bring this action on behalf of all minorities (collectively referred to as the "Class"
4 | or "Members of the Class") who have entered into residential mortgage loan
5 | contracts that were financed or purchased by Wells Fargo, and who have been
6 | subjected to racial discrimination as set forth in this Complaint.

7 |      7.    By this action, Plaintiffs and Members of the Class seek injunctive,
8 | declaratory, and equitable relief and other remedies against Wells Fargo.

9 | <div align="center">JURISDICTION AND VENUE</div>

10 |      8.    This Court has jurisdiction over this action in accordance with 28
11 | U.S.C. section 1331 as a civil action arising under federal law.

12 |      9.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a
13 | substantial part of the events giving rise to Plaintiffs' claim occurred within this
14 | District.

15 | <div align="center">PARTIES</div>

16 |      10.    Plaintiffs are, and at all times herein mentioned were, residents and
17 | citizens of the state of California. At all times relevant, Plaintiffs Juan Rodriguez
18 | and Josefina Rodriguez are Latinos and own the residence located at 947 West 80th
19 | Street, Los Angeles, California, 90044.

20 |      11.    Wells Fargo is, and at all times relevant times, was, a national banking
21 | corporation duly organized and existing under and by virtue of the laws of the state
22 | of California and engaged in the business of banking, including the making of
23 | loans as alleged in this Complaint, within the state of California and within this
24 | judicial district.

25 | <div align="center">BACKGROUND</div>

26 | A.   History of Discrimination

27 |      12.    Racial discrimination in America's mortgage lending industry is long
28 | established. As set forth in this Complaint, the unfortunate history of

1   discrimination continues to this day because of the discriminatory treatment of

2   minorities when obtaining mortgage loans from banks such as Wells Fargo.

3        13.    The Joint Center for Housing Studies at Harvard University

4   summarized the history of racial discrimination in mortgage lending in a study in

5   2005 called "The Dual Mortgage Market:  The Persistence of Discrimination in

6   Mortgage Lending."  This study concludes:

7               [i]n the immediate post-World War II period, racial

8               discrimination in mortgage lending was easy to spot.

9               From government-sponsored racial covenants in the

10              Federal Housing Administration (FHA) guidelines to the

11              redlining practices of private mortgage lenders and

12              financial institutions, minorities were denied access to

13              home mortgages in ways that severely limited their

14              ability to purchase a home.  Today, mortgage lending

15              discrimination is more subtle.  . . .  [M]ore than three

16              decades after the enactment of national fair lending

17              legislation, minority consumers continue to have less-

18              than-equal access to loans at the best prices and on the

19              best terms that their credit history, income, and other

20              individual financial considerations merit.

21       14.    In 2004, concerned with potential racial discrimination in loan

22   pricing, and recognizing that racial or other types of discrimination can occur when

23   loan officers and mortgage brokers have latitude in setting interest rates, the

24   Federal Reserve Board began requiring lenders to also report information

25   concerning rates, points, and fees, charged to borrowers on high-cost loans.

26       15.    In 1989, Congress required lenders to begin disclosing information

27   about mortgage borrowers' race and ethnicity.  The Federal Home Mortgage

28   Disclosure Act ("HMDA") requires mortgage lenders to report information about

3

1   the home loans they process each year.  In 2005, lenders in this country reported

2   information on more than 30 million home loan applications as required by the

3   HMDA.

4         16.    For 2004, the HMDA data discloses profound loan pricing disparities

5   between Hispanic borrowers and non-Hispanic whites even after accounting for

6   borrowers' gender, income, property location, and loan amount.  After accounting

7   for those differences in the 2004 HMDA data, Hispanic borrowers were still almost

8   twice as likely to receive a higher-rate of interest on their home loan as non-

9   Hispanic whites.  (http://www.responsiblelending.org/pdfs/Testimony-

10  Ernst061306.pdf (last viewed October 11, 2007).)  The Center for Responsible

11  Lending testified:

12          Our findings were striking.  We found that race and

13          ethnicity–two factors that should play no role in pricing–

14          are significant predictors of whether a subprime loan falls

15          into the higher-rate portion of the market.  Race and

16          ethnicity remained significant predictors even after we

17          accounted for the major factors that lenders list on rate

18          sheets to determine loan pricing.

19

20          In other words, even after controlling for legitimate loan

21          risk factors, including borrowers' credit score, loan-to-

22          value ratio, and ability to document income, race and

23          ethnicity matter.  African American and Latino borrowers

24          continue to face a much greater likelihood of receiving the

25          most expensive subprime loans–even with the same loan

26          type and the same qualifications as their white

27          counterparts.  Across a variety of different loan types,

28          African American and Latino borrowers were commonly

4

1      30% more likely to receive a high-rate loan than White

2      borrowers. (emphasis added).

3      17.    Indeed, a speech in 2006, the Vice-Chairman of the Federal Deposit

4  Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and

5  observed that that data "clearly indicated" that Hispanics are more likely to receive

6  high-cost home loans than are non-Hispanic whites. (http://www.fdic.gov/

7  news/news/speeches/archives/2006/chairman/spoct1806.html (last viewed October

8  11, 2007).)  Mr. Gruenberg concluded:

9      A number of studies have been conducted using new

10     Home Mortgage Disclosure Act ("HMDA") data that have

11     revealed significant disparities in the incidence of higher

12     priced loans across racial and ethnic groups. . . .

13

14     Based on 2004 data, it clearly indicated that certain

15     minority groups, including Hispanic whites and African

16     Americans, are more likely to receive high-priced

17     mortgage loans than non-minority groups.  The study

18     attempted to explain these disparities by taking

19     differences in income, loan amounts, and other borrower-

20     specific HMDA information into consideration, but was

21     not able to fully explain the differentials between racial

22     groups.  Numerous studies conducted by other

23     organizations since then were also unable to fully account

24     for the pricing disparities using data on borrower

25     creditworthiness and other factors.

26

27     Last month an updated Federal Reserve study was

28     released using 2005 HMDA data that again revealed that

5

1  Hispanic whites and African Americans are significantly
2  more likely to receive higher priced loans than non-
3  Hispanic Whites. Relative to the earlier Federal Reserve
4  study, it revealed a significant increase in the incidence of
5  high priced loans as well as significantly larger disparities
6  in the proportion of minorities receiving high-priced loans
7  compared to non-Hispanic Whites. The study found that
8  the incidence of higher priced conventional home
9  purchase loans was 54.7 percent for blacks and 46.1
10  percent for Hispanic whites compared to 17.2 percent for
11  non-Hispanic whites. The researchers attempted to
12  control for borrower-related factors but found that such
13  factors accounted for only one-fifth of these differences.
14  This evidence of even greater disparities in the incidence
15  of high-priced loans across racial groups contained in the
16  2005 data further heightens concerns about lending
17  practices and the pricing of credit. (emphasis added;
18  footnotes omitted).

19  18.    Thus, for 2005, the HMDA data shows that "for conventional home-
20  purchase loans, the gross mean incidence of higher-priced lending was 54.7
21  percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5
22  percentage points." *Id.* at A159. The situation is similar for refinancings, where
23  there is a difference of 28.3 percentage points between blacks and non-Hispanic
24  whites. Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

25  19.    In addition, the Association of Community Organizations for Reform
26  Now ("ACORN") released a report entitled "The High Cost of Credit: Disparities
27  in High-priced Refinanced Loans to Minority Homeowners in 125 American
28  Cities," dated September 27, 2005, which found that "[i]n every metropolitan area

1 | where at least 50 refinances were made to African-American homeowners,

2 | African-Americans were more likely to receive a high-cost loan than White

3 | homeowners."

4 | B.    Wells Fargo's Discriminatory Lending Policies

5 |         1.    The Loan Officers, Mortgage Brokers and Correspondent

6 |               Lenders Act For and at the Direction of Wells Fargo

7 |      20.    Through loan officers, brokers and a network of correspondent

8 | lenders, Wells Fargo originates and funds mortgage loans.  These loan officers,

9 | mortgage brokers and correspondent lenders work with Wells Fargo to broker and

10 | fund loans to borrowers under the direction of Wells Fargo and in conformance

11 | with Wells Fargo's credit-pricing policies and lending procedures.  Indeed, Wells

12 | Fargo stated on its website that "mortgage broker[s] . . ." match borrowers with

13 | lenders. (https://www.wellsfargo.com/mortgage/glossary/m) (last viewed October

14 | 11, 2007).  According to Wells Fargo's website, these correspondent lenders

15 | "originate, underwrite, and close loans before sending them to Wells Fargo . . ."

16 | (https://www.wellsfargo.com/com/third_party_mortgage/) (last viewed October 11,

17 | 2007).)

18 |      21.    Authorized mortgage brokers act as the agents of Wells Fargo in

19 | originating mortgage loans and Wells Fargo discriminates through its authorized

20 | mortgage brokers.

21 |      22.    These authorized mortgage brokers enter into agreements with Wells

22 | Fargo to accept loan applications on behalf of Wells Fargo.  They also

23 | communicate to the loan applicants the financing terms and rates set by Wells

24 | Fargo and inform the loan applicants of the various financing options of Wells

25 | Fargo.  Ultimately, the authorized mortgage brokers originate mortgage loans

26 | funded by Wells Fargo using the paperwork supplied by Wells Fargo and in strict

27 | accordance with Wells Fargo's policies and procedures.

28 |      23.    The authorized correspondent lenders and loan officers of Wells

1 | Fargo act as the agents of Wells Fargo in originating loans. These correspondent
2 | mortgage lenders and loan officers of Wells Fargo act in accordance with Wells
3 | Fargo's credit policies and procedures. Wells Fargo funds these loans before or
4 | shortly after these loans with the borrowers close.

5 |     24.    Wells Fargo funds loans originated by its loan officers, authorized
6 | mortgage brokers and correspondent lenders, establishes the terms and conditions
7 | respecting these loans, and absorbs part or all of the risk on these loans. Wells
8 | Fargo actively and intentionally enforces and encourages its lending policies
9 | through its authorized loan officers, mortgage brokers and correspondent lenders.

10 |     25.    Thus, Wells Fargo provides to its loan officers, correspondent lenders
11 | and mortgage brokers with loan-related forms and agreements, including loan
12 | contracts, loan applications, and instructions for completing loan applications and
13 | contracts. In addition, Wells Fargo instructs and directs its authorized brokers to
14 | follow policies and procedures of Wells Fargo and encourages that training with
15 | marketing support and policies.

16 |     2.    Through Training and Financial Incentives, Wells Fargo
17 |         Fosters and Encourages Discretionary Charges to Minorities

18 |     26.    At all relevant times, Wells Fargo employed discretionary loan pricing
19 | procedures that cause minority borrowers to pay subjective and additional fees
20 | such as yield spread premiums and other mortgage-related finance charges at
21 | higher rates than similarly situated non-minority borrowers. In doing so, Wells
22 | Fargo has intentionally discriminated against Plaintiffs and Members of the Class
23 | by systematically extending mortgage loans to minorities with less favorable
24 | conditions than were given to similarly situated non-minority borrowers. This
25 | pattern of discrimination is not the result of random or non-discriminatory factors.
26 | The discrimination is a direct result of the mortgage credit lending policies and
27 | procedures of Wells Fargo.

28 |     27.    Wells Fargo authorized its loan officers, mortgage brokers and

8

1   correspondent lenders to receive their compensation from Wells Fargo based on
2   the rate of interest on a loan charged to the borrower.  Loan officers, authorized
3   brokers and correspondent lenders of Wells Fargo receive more compensation
4   from Wells Fargo when they sell their clients loans of Wells Fargo with higher
5   interest rates and less compensation from Wells Fargo when their clients obtain
6   loans from Wells Fargo with lower interest rates.

7       28.    In several important ways, Wells Fargo intentionally and actively
8   implements this discriminatory loan pricing procedure.

9       29.    Wells Fargo instructs and educates its loan officers and brokers in
10  Wells Fargo's credit policies and procedures.  Wells Fargo conducts weekly
11  "training" sessions online (*i.e.*, interactive Internet seminars) for its brokers
12  concerning its loan products where it disseminates to brokers "detailed information
13  on [Wells Fargo's] product guidelines[.]"  (https:// ilnet.wellsfargo.com/ildocs
14  /ee/training.html (last viewed on October 11, 2007).)

15      30.    Further, Wells Fargo also maintains an Internet site called "Broker's
16  First" that supplies brokers with rate sheets, a "Broker Guide," and underwriting
17  guidelines.

18      31.    In addition, Wells Fargo instructs its loan officers and brokers in
19  marketing Wells Fargo's loans.  For example, Wells Fargo provides its authorized
20  brokers downloadable mortgage advertisements.  (https://ilnet.wellsfargo.com
21  /ildocs/ee/marketing_tools.html (last viewed on October 11, 2007).)

22      32.    The loan pricing policies and procedures of Wells Fargo permit its
23  authorized loan officers, mortgage brokers and correspondent lenders to charge at
24  their discretion certain loan applicants including minority loan applicants, yield
25  spread premiums and other additional discretionary charges.

26      33.    This pattern of discrimination of Wells Fargo cannot be justified by
27  business necessity, and the discrimination could be avoided through the use of
28  alternative policies and procedures that have less discriminatory impact and no less

9

1  business efficacy.

2          3.    Wells Fargo's Practice of Discretionary and Subjective
3                Additional Charges Are Designed to Discriminate Against
4                Minorities

5          34.    When a mortgage loan applicant has provided credit information to
6  Wells Fargo through a loan officer, mortgage broker or correspondent lender,
7  Wells Fargo performs an objective credit analysis. To do so, Wells Fargo
8  evaluates numerous risk-related credit variables, such as debt-to-income ratios,
9  credit bureau histories, debt ratios, loan-to-value ratios, bankruptcies, automobile
10 repossessions, prior foreclosures, payment histories, credit scores, and similar
11 objective criteria.

12         35.    From these factors, Wells Fargo develops a risk-based financing rate.
13 Wells Fargo and the mortgage industry in general refer to this risk-based financing
14 rate as the "par rate." The brokers and correspondent lenders of Wells Fargo can
15 also estimate the "par rates" with reference to a loan applicant's credit bureau-
16 determined credit score.

17         36.    Wells Fargo applies objective criteria to calculate this risk-related
18 interest rate. However, as part of its established procedures, Wells Fargo
19 authorizes its loan officers, brokers and correspondent lenders to subsequently
20 increase that rate and, in addition, impose additional non-risk-based charges
21 including yield spread premiums, and other discretionary fees. As a matter of
22 course, Wells Fargo routinely communicates applicable par rates, authorized yield
23 spread premiums, and other discretionary fees to its loan officers, brokers and
24 correspondent lenders through "rate sheets" and other established communications
25 and directives.

26         37.    As a matter of policy, Wells Fargo grants its loan officers, authorized
27 mortgage brokers and correspondent lenders the discretion to impose yield spread
28 premiums and other additional subjective fees on borrowers. When borrowers pay

10

1 | yield spread premiums, Wells Fargo shares in additional income generated by the
2 | increased cost because borrower with the yield spread premium is required to pay a
3 | higher rate in the future on their loan than they would have paid if they had been
4 | placed in a par rate loan without a yield spread premium.

5 |     38.    The borrowers of Wells Fargo pay yield spread premiums and other
6 | discretionary fees that inflate their finance charges not knowing that a portion of
7 | their finance charges are non-risk-related.

8 |     39.    The policies and procedures of Wells Fargo concerning the
9 | assessment of yield spread premiums and other discretionary fees cause persons
10 | with identical or similar credit scores to pay differing amounts for obtaining the
11 | same loan. Such subjective loan pricing–which by design imposes differing
12 | finance charges on persons with the same or similar credit profiles–disparately
13 | impacts minorities who obtain loans from Wells Fargo.

14 |     40.    Relative to similarly situated non-minorities, Wells Fargo's use of
15 | yield spread premiums and other discretionary fees disproportionately and
16 | adversely affects minorities. The credit policy of Wells Fargo causes minorities to
17 | pay disparately more discretionary finance charges than similarly situated non-
18 | minorities. As the HMDA data referenced above confirms, minorities are
19 | substantially more likely than similarly situated non-minorities to pay such
20 | increased charges.

21 |     41.    The credit policy of Wells Fargo is in fact intentionally
22 | discriminatory.

23 | C.    As Part of Its Pattern of Discrimination, Wells Fargo Imposed
24 |     Discriminatory Fees on Plaintiffs

25 |     42.    The discriminatory credit pricing policy of Wells Fargo directly
26 | impacted and damaged the Plaintiffs. With a closing date of August 1, 2006,
27 | Plaintiffs purchased a residence with a mortgage loan issued by Wells Fargo in the
28 | amount of $620,500. Schaefer Financial Services ("Schaefer") was the mortgage

1 | loan broker with respect to the loan of Plaintiffs obtained from Wells Fargo.

2 | 43. According to their HUD-I closing statement, at the closing of the loan,
3 | Plaintiffs were subjected to a charge described as "Mortgage Broker Compensation
4 | By WFB To: SCHAEFER FINANCIAL SERVICE" in the amount of $6,205.00
5 | on a "POC" basis (*i.e.*, paid outside of closing) by Wells Fargo. A true and correct
6 | copy of the HUD-I closing statement is attached hereto as Exhibit "A." On
7 | information and belief, this "compensation" to Schaefer, was in fact a yield spread
8 | premium. This yield spread premium was assessed pursuant to Wells Fargo's
9 | credit loan pricing policy as alleged in this Complaint.

10 | 44. At all relevant times, Schaefer and Wells Fargo knew that Plaintiffs
11 | were minority borrowers. The Schaefer employee who brokered Plaintiffs' Wells
12 | Fargo loan in conformance with Wells Fargo's discriminatory credit pricing policy
13 | was aware that Plaintiffs are Latinos when arranging the loan to Plaintiffs from
14 | Wells Fargo.

15 | 45. As a result of Wells Fargo's discriminatory conduct, Plaintiffs
16 | received a loan with more expensive terms and higher costs than similarly situated
17 | non-minority borrowers of Wells Fargo.

18 | ## CLASS ALLEGATIONS

19 | 46. This class action is brought in accordance with the to ECOA, the FHA
20 | and the Civil Rights Act by Plaintiffs on behalf of themselves and all minority
21 | borrowers (the "Class") who entered into residential mortgage loan contracts that
22 | were financed or purchased by Wells Fargo, and who were harmed by the
23 | discriminatory conduct of Wells Fargo.

24 | 47. Plaintiffs sue on their own behalf, and on behalf of a class of similarly
25 | situated persons in accordance with Rule 23(a) and (b)(2) and/or (b)(3) of the
26 | Federal Rules of Civil Procedure.

27 | 48. Plaintiffs do not know the exact number of persons in the Class or
28 | identities of the Members of the Class, because that information is in the exclusive

12

1   control of Wells Fargo.  Plaintiffs believe that the Class includes many thousands,
2   or tens of thousands of individuals, who are geographically dispersed throughout
3   the United States.  Therefore, the Class is so numerous that joinder of all members
4   is impracticable.

5          49.   All Members of the Class have been subjected to and impacted by
6   Wells Fargo's practice of assessing yield spread premiums and other discretionary
7   fees on mortgage loans.  There are questions of law and fact that are common to
8   the Class, and that predominate over any questions affecting only individual
9   Members of the Class.  These common issues include, but, are not limited to, the
10  following:

11        a.   the nature and scope of Wells Fargo's policies and procedures
12             concerning discretionary mortgage loan fees;

13        b.   whether Wells Fargo used a scheme or common course of conduct
14             that acted to deceive Plaintiffs and Member of the Class;

15        c.   whether Wells Fargo discriminated against Plaintiffs and Members of
16             the Class by charging them higher interest, fees, and costs, than Wells
17             Fargo charges similarly situated non-minority borrowers;

18        d.   whether Wells Fargo policies and procedures regarding other
19             discretionary mortgage loan-related fees have a disparate impact on
20             minority borrowers;

21        e.   whether Wells Fargo has any legitimate non-discriminatory reason for
22             its policies and procedures;

23        f.   whether Wells Fargo's mortgage credit-pricing policies and
24             procedures are racially motivated;

25        g.   whether Wells Fargo and its subsidiaries participate in decisions
26             concerning whether or not to extend credit to consumers (and thus are
27             creditors under ECOA);

28        h.   whether Wells Fargo has a less discriminatory alternative to these

1          policies and procedures;

2          i.      whether the Court should enter declaratory and injunctive relief; and

3          j.      the proper measure of disgorgement and/or monetary relief for

4                  Plaintiffs and Members of the Class.

5          50.     Plaintiffs' claims are typical of the claims of the Class, and do not

6    conflict with the interests of any Members of the Class in that both Plaintiffs, and

7    the Members of the Class, were subjected to the same yield spread premiums and

8    other discretionary fees that have disproportionately affected minority borrowers.

9          51.     Plaintiffs will fairly and adequately represent the interests of the

10   Class. Plaintiffs are committed to vigorous prosecution of the claims of the Class,

11   and have retained attorneys who have extensive experience in consumer protection

12   and credit discrimination actions.

13         52.     Wells Fargo has acted or refused to act on grounds generally

14   applicable to the Class, thereby making appropriate final injunctive relief or

15   corresponding declaratory relief with respect to the class as a whole.

16         53.     A class action is superior to other methods for the speedy and efficient

17   adjudication of this controversy. A class action regarding the issues as alleged in

18   this action does not create any problems of manageability.

19              FRAUDULENT CONCEALMENT, CONTINUING

20         VIOLATIONS AND EQUITABLE TOLLING OF CLAIMS

21         54.     Plaintiffs and Members of the Class did not know, and could not

22   reasonably have known, that they would receive from mortgage loans Wells Fargo

23   with more burdensome terms and higher costs and fees than non-minorities.

24   Therefore, the claims of Plaintiffs and Members of the Class did not accrue until

25   shortly before the filing of this action.

26         55.     The discriminatory conduct of Wells Fargo was concealed. Wells

27   Fargo knew that Plaintiffs and Members of the Class did not know the terms, fees,

28   and costs of their loans relative to those available to non-minorities. Wells Fargo

14

1  knew that the terms, fees, and costs provided to minorities were substantially more
2  burdensome and expensive than the loans provided to non-minorities and Wells
3  Fargo knew that these minorities did not know these facts.

4      56.    Wells Fargo has not released or provided information about its
5  discrimination against Plaintiffs and Members of the Class, and Wells Fargo has
6  actively and fraudulently concealed its discriminatory practices and policies.

7      57.    Accordingly, Plaintiffs and Members of the Class in the exercise of
8  due diligence could not have reasonably discovered the discriminatory practices,
9  and they did not do so until just recently.  Thus, the Members of the Class still do
10  not know that they have been and continue to be injured by Wells Fargo's
11  discriminatory conduct.

12      58.    The discriminatory conduct of Wells Fargo is continuing in nature,
13  and, at all times relevant, Wells Fargo has committed discriminatory acts
14  throughout the limitations period.

15      59.    There is a substantial connection between the acts of discrimination
16  occurring within the limitation periods prior to the filing of this action, and the acts
17  of discrimination before that time.  The acts involve the same type of
18  discrimination and are recurring, not isolated events.

19      60.    Wells Fargo specifically misled Plaintiffs and Members of the Class
20  into believing that the mortgage-related terms, fees, and costs they were offered
21  were fair, reasonable, and the same as offered to non-minorities, and Wells Fargo
22  took steps to conceal its fraudulent and unfair conduct.

23      61.    The statute of limitations applicable to any claims that Plaintiffs or
24  other Members of the Class have brought or could bring as a result of the unlawful
25  and fraudulent concealment and course of conduct described herein, have been
26  tolled as a result of Wells Fargo's fraudulent concealment.  In addition, Plaintiffs
27  and the Class did not and could not have discovered their causes of action until the
28  time alleged below, thereby tolling any applicable statute of limitations.

FIRST CAUSE OF ACTION

(Violation of the Equal Credit Opportunity Act

(15 U.S.C. §§1691-1691f))

62.    Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

63.    Wells Fargo engages in credit transactions through its offering, granting, and purchasing of residential home mortgage loans.

64.    By imposing higher interest rates and other discretionary fees on residential home mortgage loans to Plaintiffs and Members of the Class than it imposed on non-minority mortgage borrowers, Wells Fargo has discriminated against Plaintiffs and Members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA.  15 U.S.C. section 1691(a).

65.    In addition, Wells Fargo's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiffs and Members of the Class.

66.    As a proximate result of Wells Fargo's violation of 15 U.S.C. section 1691, Plaintiffs and Members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

67.    In addition, Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs and Members of the Class.  As a result, Plaintiffs and Members of the Class are entitled to punitive damages.

68.    Moreover, Wells Fargo continues to discriminate in violation of the ECOA against Members of the Class every time Wells Fargo provides a residential home mortgage loan as described herein.  If not enjoined from such violation by

1  the Court, Wells Fargo will continue to engage in conduct that disregards the rights
2  of Plaintiffs and Members of the Class, and cause Plaintiffs and Members of the
3  Class irreparable injury for which there is no adequate remedy at law.  15 U.S.C.
4  section 1691(e).

5      69.    Plaintiffs and Members of the Class respectfully request that this
6  Court to declare the rights of the parties herein regarding Wells Fargo's obligation
7  to participate in credit transactions without discriminating against applicants for
8  credit on the basis of the applicants' race.

9              SECOND CAUSE OF ACTION
10            (Racial Discrimination (42 U.S.C. §1981))

11     70.    Plaintiffs refer to the prior paragraphs of this Complaint and
12  incorporate those paragraphs as though set forth in full in this cause of action.

13     71.    Wells Fargo intentionally discriminated against Plaintiffs and
14  Members of the Class by charging higher interest rates and other fees and costs
15  than were charged to similarly situated non-minority borrowers.

16     72.    Wells Fargo unlawfully discriminated against Plaintiffs and Members
17  of the Class in (i) formation of contracts; (ii) making, performance, modification,
18  and termination of contracts; (iii) the enjoyment of all benefits, privileges, terms
19  and conditions of the contractual relationship; and/or (iv) conduct that interferes
20  with the right to establish and enforce contract obligations.

21     73.    Wells Fargo's actions violate 42 U.S.C. section 1981, as well as the
22  rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth
23  Amendments to the Constitution of the United States.

24     74.    Plaintiffs and Members of the Class are entitled to injunctive and
25  declaratory relief and damages, or make whole equitable relief as a result of Wells
26  Fargo's discriminatory conduct.

27     75.    At no time has Wells Fargo undertaken corrective action to ameliorate
28  its racially discriminatory practices.  Wells Fargo continues to reap the profits of

17

1  its discriminatory practices and continues to discriminate.  Wells Fargo's conduct
2  as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous,
3  or otherwise aggravated beyond mere negligence.  Wells Fargo has acted with
4  malice and reckless indifference to the federally protected rights of Plaintiffs and
5  Members of the Class.  As a result, Plaintiffs and Members of the Class are entitled
6  to punitive damages.

## THIRD CAUSE OF ACTION

(Racial Discrimination (42 U.S.C. §1982))

9  76.  Plaintiffs refer to the prior paragraphs of this Complaint and
10  incorporate those paragraphs as though set forth in full in this cause of action.

11  77.  42 U.S.C. section 1982 provides that all citizens of the United States
12  "shall have the same right, in every State and Territory, as is enjoyed by White
13  citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal
14  property."

15  78.  Wells Fargo has discriminated against Plaintiffs and the Class with
16  respect to their mortgage loans for their homes by charging Plaintiffs and the Class
17  higher interest rates and other discretionary fees than Wells Fargo has charged
18  similarly situated non-minority consumers.  As a result of Wells Fargo's conduct,
19  Plaintiffs and the Class have not had the same right as Caucasians to inherit,
20  purchase, sell, hold, and convey real property.  Wells Fargo has thereby violated 42
21  U.S.C. section 1982.

22  79.  Wells Fargo's violation of 42 U.S.C. section 1982 was intentional and
23  malicious.

24  80.  As a proximate result of Wells Fargo's violation of 42 U.S.C. section
25  1982, Plaintiffs and Members of the Class have been injured, and are entitled to
26  injunctive and declaratory relief and damages, or make whole equitable relief.  In
27  addition, Wells Fargo's conduct as alleged herein was intentional, willful, wanton,
28  reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.

1 Wells Fargo acted with malice and reckless indifference to the federally protected
2 rights of Plaintiffs and Members of the Class. As a result, Plaintiffs and Members
3 of the Class are entitled to punitive damages.

### FOURTH CAUSE OF ACTION

(Violation of the Fair Housing Act (42 U.S.C. §§3601-3619))

6 81. Plaintiffs refer to the prior paragraphs of this Complaint and
7 incorporate those paragraphs as though set forth in full in this cause of action.

8 82. Mortgage lending and the providing of residential mortgage loans is a
9 "residential real estate-related transaction" within the meaning of the FHA. 42
10 U.S.C. section 3605(b).

11 83. By imposing higher interest rates and other discretionary fees on
12 residential home mortgage loans to Plaintiffs and Members of the Class than it
13 imposed on non-minority mortgage borrowers, Wells Fargo has discriminated
14 against Plaintiffs and Members of the Class concerning their ability to participate
15 in real estate-related transactions, and in the terms and conditions of such
16 transactions, in violation of the FHA. 42 U.S.C. section 3605(a).

17 84. In addition, Wells Fargo's pricing policies and procedures (including
18 yield spread premiums), which provide financial incentives to its mortgage brokers
19 and correspondent lenders to make subjective decisions to increase interest rates
20 and charge additional fees and costs, had a disparate impact upon Plaintiffs and
21 Members of the Class.

22 85. As a proximate result of Wells Fargo's violation of 42 U.S.C. section
23 3605, Plaintiffs and Members of the Class have been injured and are entitled to
24 injunctive and declaratory relief and damages, or make whole equitable relief.

25 86. In addition, Wells Fargo's conduct as alleged herein was intentional,
26 willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond
27 mere negligence. Wells Fargo acted with malice and reckless indifference to the
28 federally protected rights of Plaintiffs and Members of the Class. Accordingly,

1  Plaintiffs and Members of the Class are entitled to punitive damages.

2      87.    Moreover, Wells Fargo continues to discriminate in violation of the
3  FHA against Members of the Class every time Wells Fargo provides a home
4  mortgage loan as described in this Complaint. If not enjoined from such violation
5  by the Court, Wells Fargo will continue to engage in conduct that disregards the
6  rights of Plaintiffs and Members of the Class, and cause Plaintiffs and Members of
7  the Class irreparable injury for which there is no adequate remedy at law. 42
8  U.S.C. section 3613(c).

9      88.    Plaintiffs and Members of the Class respectfully request this Court to
10  declare the rights of the parties herein regarding Wells Fargo's obligation to
11  participate in credit transactions without discriminating against applicants for
12  credit on the basis of the applicants' race.

13      WHEREFORE, Plaintiffs and Members of the Class respectfully pray for
14  judgment as follows:

15      A.    An order determining that the action is a proper class action pursuant
16      to Rule 23 of the Federal Rules of Civil Procedure;

17      B.    A Judgment granting extraordinary equitable and/or injunctive relief
18      as permitted by law or equity, including rescission, restitution,
19      reformation, attaching, impounding, or imposing a constructive trust
20      upon, or otherwise restricting, the proceeds of Defendant's ill-gotten
21      funds to ensure that Plaintiffs and Members of the Class have an
22      effective remedy;

23      C.    A Judgment awarding damages, including punitive damages, in favor
24      of Plaintiffs and Members of the Class;

25      D.    A Judgment granting declaratory and injunctive relief and all relief
26      that flows from such injunctive and declaratory relief;

27      E.    A Judgment awarding Plaintiffs and Members of the Class costs and
28      disbursements incurred in connection with this action, including

1      reasonable attorneys' fees, expert witness fees and other costs; and

2      F.      A Judgment or other Order granting such other and further relief as

3              the Court deems just and proper including, but not limited to,

4              recessionary relief and reformation.

5

6      Dated: October 18, 2007          LAW OFFICES OF TIMOTHY P. DILLON

7

8                                       By: _____

9                                           Timothy P. Dillon
                                            Attorneys for Plaintiffs
10                                          Juan Rodriguez and Josefina Rodriguez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

1

## **DEMAND FOR JURY TRIAL**

2

3    Plaintiffs demand a trial by jury on all issues so triable by jury.

4

5    Dated: October 18, 2007          LAW OFFICES OF TIMOTHY P. DILLON

6

7                                                         By: _____

8                                                              Timothy P. Dillon
                                                              Attorneys for Plaintiffs
9                                                              Juan Rodriguez and Josefina Rodriguez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

# Greenleaf Escrow, Inc.

6528 Greenleaf Ave., Ste. 100
Whittier, CA 90601
Phone: (562) 309-0028 • Fax: (562) 693-0342

BUYER/BORROWER STATEMENT
Final

| | |
|---|---|
| ..umber: 06-053-SH | |
| .ow Officer: Sonya Harrell | |

| | |
|---|---|
| Title Order Number: | 600005346 |
| Date: | 04/19/2007 - 1:02:54PM |
| Closing Date: | 08/01/2006 |

Buyer/Borrower: Juan Rodriguez and Josefina Rodriguez

Seller: UNIVERSAL DEVEOPMENT, INC., A CALIFORNIA CORPORATION

Property: 947 W. 80th St., Los Angeles, CA 90044

| | | |
|---|---|---|
| **TOTAL CONSIDERATION** | 730,000.00 | |
| Initial Deposit | | 10,000.00 |
| Initial Deposit | | 101,863.04 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 2,395.19 per 6 month(s) 7/01/2006 to 8/01/2006 | | 399.20 |
| Seller credit to Borrower(2%) | | 14,600.00 |
| **COMMISSION(S):** | | |
| Debits to Commission | | 2,500.00 |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 620,500.00: SECURITY UNION TITLE COMPANY. | 672.00 | |
| Deed Recording Fee (2): SECURITY UNION TITLE COMPANY. | 12.00 | |
| Mortgage Recording Fee: SECURITY UNION TITLE COMPANY. | 89.00 | |
| Endorsement: SECURITY UNION TITLE COMPANY. | 50.00 | |
| Wire/Express: SECURITY UNION TITLE COMPANY. | 11.50 | |
| Subescrow: SECURITY UNION TITLE COMPANY. | 37.50 | |
| special messenger: SECURITY UNION TITLE COMPANY. | 21.85 | |
| **ESCROW CHARGES TO: Greenleaf Escrow, Inc.** | | |
| Escrow Fee | 1,295.00 | |
| Doc/Copy/Pkg | 150.00 | |
| Loan Tie In | 75.00 | |
| Courier | 75.00 | |
| Wire Fee | 50.00 | |
| **LENDER CHARGES** | | |
| New to WELLS FARGO BANK: | | 620,500.00 |
| Interest Adjustment From 7/31/2006 To 8/01/2006, 1 Days, @ 157.2500/per day: WELLS FARGO BANK | 157.25 | |
| Underwriting Fee: WELLS FARGO BANK | 695.00 | |
| Appraisal Review: WELLS FARGO BANK | 135.00 | |
| Tax Registration: WELLS FARGO BANK | 85.00 | |
| Flood Determination: WELLS FARGO BANK | 19.00 | |
| Processing Fee: SCHAEFER FINANCIAL SERVICE | 595.00 | |
| Origination Fee: SCHAEFER FINANCIAL SERVICE | 12,410.00 | |
| Mortgage Broker Compensation By WFB: SCHAEFER FINANCIAL SERVICE POC $6,205.00 | | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Notary Fee: REBECCA GARCIA | 200.00 | |
| Hazard Insurance: Oscar Jimenez Insurance Agency | 1,056.06 | |
| **BALANCE DUE YOU** | 1,971.08 | |
| **TOTALS** | 749,862.24 | 749,862.24 |

THIS IS A FINAL CLOSING STATEMENT

EXHIBIT A, PAGE 23

OMB No. 2502-0265

| A.  U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN |
|---|---|

| | |
|---|---|
| | 1. ☐ FHA  2. ☐ FHMA  3. ☒ CONV. UNINS. |
| | 4. ☐ VA  5. ☐ CONV. INS. |
| | 6. FILE NUMBER: 06-053-SH  7. LOAN NUMBER 0153738026 |
| | 8. MORTGAGE INS. CASE NO.: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME & ADDRESS OF BORROWER: | Juan Rodriguez and Josefina Rodriguez  947 W. 80th St., Los Angeles, CA 90044 |
|---|---|
| E. NAME & ADDRESS OF SELLER: | UNIVERSAL DEVEOPMENT, INC., A CALIFORNIA CORPORATION |
| F. NAME & ADDRESS OF LENDER: | WELLS FARGO BANK  711 W. BROADWAY ROAD, Tempe, AZ 85282 |
| G. PROPERTY LOCATION: | 947 W. 80th St., Los Angeles, CA 90044 |
| H. SETTLEMENT AGENT: | Greenleaf Escrow, Inc. |
| PLACE OF SETTLEMENT: 6528 Greenleaf Ave., Ste. 100, Whittier, CA 90601 (562) 309-0028 | |
| I.  SETTLEMENT DATE: | 8/01/2006   Final |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. Contract sales price | | 730,000.00 | 401. Contract sales price | | |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower: (line 1400) | | 17,891.16 | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | | **Adjustments For Items Paid By Seller In Advance:** | | |
| 106. City/town taxes | to | | 406. City/town taxes | to | |
| 107. County taxes | to | | 407. County taxes | to | |
| 108. Assessments | to | | 408. Assessments | to | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| **120. Gross Amount Due From Borrower:** | | 747,891.16 | **420. Gross Amount Due To Seller:** | | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | | **500. Reductions In Amount Due To Seller:** | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | 620,000.00 | 502. Settlement charges to seller (line 1400) | | |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. Debits to Commission | | 2,500.00 | 504. Payoff 1st Mtg. Ln. | | |
| 205. Initial Deposit To Escrow | | 101,863.04 | 505. Payoff 2nd Mtg. Ln. | | |
| 206. Initial Deposit To Escrow | | 10,000.00 | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Adjustments For Items Unpaid By Seller:** | | | **Adjustments For Items Unpaid By Seller:** | | |
| 210. City/town taxes | to | | 510. City/town taxes | to | |
| 211. County taxes 07/01/06 | to 08/01/06 | 399.20 | 511. County taxes | to | |
| 212. Assessments | to | | 512. Assessments | to | |
| 213. Seller credit to Borrower(2%) | | 14,600.00 | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| | | | | | |
| | | | | | |
| **220. Total Paid By/For Borrower:** | | 749,862.24 | **520. Total Reductions In Amount Due Seller:** | | |
| **300. Cash At Settlement From/To Borrower:** | | | **600. Cash At Settlement From/To Seller:** | | |
| 301. Gross amount due from borrower (line 120) | | 747,891.16 | 601. Gross amount due to seller (line 420) | | |
| 302. Less amount paid by/for borrower (line 220) | | 749,862.24 | 602. Less reductions in amount due seller (line 520) | | |
| **303. Cash (☐FROM) ☒TO) Borrower:** | | 1,971.08 | **603. Cash (☐TO) (☐FROM) Seller:** | | 0.00 |

Previous Edition is Obsolete
Form No. 1581
3/86

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

EXHIBIT A, PAGE 24

SETTLEMENT CHARGES

Escrow: 06-053-SH

| | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission: Based On Price 730,000.00 @ 5.00 % = 36,500.00 | | | |
| **Division of Commission (line 700) As Follows:** | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination fee 2.0000 % SCHAEFER FINANCIAL SERVICE 2% Origination fee to Bro | | 12,410.00 | |
| 802. Loan Discount % | | | |
| 803. Appraisal fee to: | | | |
| 804. Credit report to: | | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. Tax Registration To: WELLS FARGO BANK | | 85.00 | |
| 809. Flood Determination To: WELLS FARGO BANK | | 19.00 | |
| 810. Processing Fee To: SCHAEFER FINANCIAL SERVICE | | 595.00 | |
| 811. Mortgage Broker Compensation By WFB To: SCHAEFER FINANCIAL SERVICE POC $6,205.00 | | | |
| 812. Underwriting Fee To: WELLS FARGO BANK | | 695.00 | |
| 813. Appraisal Review To: WELLS FARGO BANK | | 135.00 | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from 7/31/2006 to 8/01/2006 @$ 157.2500/day (1 days) | | 157.25 | |
| 902. Mortgage insurance premium for mo. to | | | |
| 903. Hazard insurance premium for yrs. to | | | |
| 904. Flood insurance premium for yrs. to | | | |
| 905. | | | |
| 906. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard insurance months @ $ per month | | | |
| 1002. Mortgage insurance months @ $ per month | | | |
| 1003. City property taxes months @ $ per month | | | |
| 1004. County property taxes months @ $ per month | | | |
| 1005. Annual assessments months @ $ per month | | | |
| 1006. Flood insurance months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to Greenleaf Escrow, Inc. | | 1,295.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above item Numbers: ) | | | |
| 1108. Title insurance to SECURITY UNION TITLE COMPANY. | | | |
| (includes above item Numbers: ) | | 672.00 | |
| 1109. Lender's coverage $ 620,500.00 Premium: $672.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. Deed Recording Fee (2) to SECURITY UNION TITLE COMPANY. | | 12.00 | |
| 1112. Endorsement to SECURITY UNION TITLE COMPANY. | | 50.00 | |
| 1113. Wire/Express to SECURITY UNION TITLE COMPANY. | | 11.50 | |
| 1114. Exhibit "A" Attached Hereto | | 409.35 | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording fees: Deed $ ;Mortgage $ 89.00 ;Releases $ | | 89.00 | |
| 1202. City/county tax/stamps: Deed $ ;Mortgage $ | | | |
| 1203. State tax/Stamps: Deed $ ;Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Notary Fee to REBECCA GARCIA | | 200.00 | |
| 1304. Hazard Insurance to Oscar Jimenez Insurance Agency | | 1,056.06 | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| **1400. Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | 17,891.16 | |

Form No. 1582

(323) 315 5166 FAX    Page 2 of 2

(323) .855 9479 (ACE MORTGAGE)

SB-4-3538-000-1

EXHIBIT A, PAGE 25

ATTACHMENT TO HUD 1

Settlement Date: 8/01/2006

Escrow No.:                    06-053-SH
Title No.:                    600005346
                    Page:        1

| EXHIBIT A: (HUD Section 1100) | Buyer Amount |
|---|---|
| Title Charges: | |
| Subescrow to SECURITY UNION TITLE COMPANY. | 37.50 |
| special messenger to SECURITY UNION TITLE COMPANY. | 21.85 |
| Doc/Copy/Pkg to Greenleaf Escrow, Inc. | 150.00 |
| Loan Tie In to Greenleaf Escrow, Inc. | 75.00 |
| Courier to Greenleaf Escrow, Inc. | 75.00 |
| Wire Fee to Greenleaf Escrow, Inc. | 50.00 |
| Total: | 409.35 |



NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER

Timothy P. Dillon (CSB No. 123953)
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205
Laguna Beach, California 92651
(949) 376-2800
(949) 376-2808 Facsimile
timothy@dillonlaw.net

ATTORNEYS FOR: PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| JUAN RODRIGUEZ and JOSEFINA RODRIGUEZ, | CASE NUMBER |
|---|---|
| Plaintiff(s), | $CV02-6780-CAS(AJwH)$ |
| v. | |
| WELLS FARGO BANK, N.A., | **CERTIFICATION AND NOTICE OF INTERESTED PARTIES** |
| Defendant(s) | **(Local Rule 7.1-1)** |

TO:    THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for _Plaintiffs_
(or party appearing in pro per), certifies that the following listed party (or parties) has (have) a direct, pecuniary
interest in the outcome of this case. These representations are made to enable the Court to evaluate possible
disqualification or recusal. (Use additional sheet if necessary.)

**PARTY**                                        **CONNECTION**

(List the names of all such parties and identify their connection and interest.)

Juan Rodriguez and Josefina Rodriguez                    Plaintiffs

Wells Fargo Bank, N.A.                              Defendant

10/1**8**/07
Date                      Sign

DOCKETED ON CM

OCT 29 2007

BY

Timothy P. Dillon
Attorney of record for or party appearing in pro per

NOTICE OF INTERESTED PARTIES

CV-30 (12/03)

ORIG

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

JUAN RODRIGUEZ and JOSEFINA RODRIGUEZ

**DEFENDANTS**

WELLS FARGO BANK, N.A.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Timothy P. Dillon (CSB No. 123953)
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205, Laguna Beach, California 92651
(949) 376-2800

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**__________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Equal Credit Opportunity Act, 15 U.S.C. §1691 - Racial Discrimination in Mortgage Lending

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☑ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities /Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: __________

CV07-6780-CAS(AJWx)

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Los Angeles County - JUAN RODRIGUEZ
Los Angeles County - JOSEFINA RODRIGUEZ

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

Los Angeles County - Wells Fargo Bank, N.A.

**List the California County,** or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

Los Angeles County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   **Date**   October 18, 2007

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

(AJWx), CLOSED, DISCOVERY, MANADR, TRANSFERRED

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:07-cv-06780-CAS-AJW

| | |
|---|---|
| Juan Rodriguez et al v. Wells Fargo Bank, N.A. | Date Filed: 10/18/2007 |
| Assigned to: Judge Christina A. Snyder | Date Terminated: 04/15/2008 |
| Referred to: Magistrate Judge Andrew J. Wistrich | Jury Demand: Plaintiff |
| Cause: 15:1681 Fair Credit Reporting Act | Nature of Suit: 480 Consumer Credit |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Juan Rodriguez**
*individually, and on the class of all others similarly situated*

represented by **Timothy P Dillon**
Timothy P Dillon Law Offices
361 Forest Avenue, Suite 205
Laguna Beach, CA 92651
949-376-2800
Email: timothy@dillonlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Josefina Rodriguez**
*individually, and on the class of others similarly situated*

represented by **Timothy P Dillon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank, N.A.**

I hereby attest and certify on 4/18/08
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and is my legal custody.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

By _____ Deputy

0101

represented by **Robert D Phillips, Jr**
Reed Smith
355 South Grand Ave
Suite 2900
Los Angeles, CA 90071
213-457-8000
Email: rphillips@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2007 | 1 | COMPLAINT against Defendant Wells Fargo Bank, N.A. (Filing fee $ 350 PAID.) Jury Demanded., filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez. (et) (Entered: 10/29/2007) |

| 10/18/2007 |  | 20 DAY Summons Issued re Complaint - (Discovery) [1] as to Wells Fargo Bank, N.A. (et) (Entered: 10/29/2007) |
|---|---|---|
| 10/18/2007 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez. (et) (Entered: 10/29/2007) |
| 10/18/2007 | 3 | NOTICE TO PARTIES OF ADR PILOT PROGRAM filed. (et) (Entered: 10/29/2007) |
| 10/18/2007 |  | FAX number for Attorney Timothy P Dillon is 949-376-2808. (et) (Entered: 10/29/2007) |
| 10/25/2007 | 4 | NOTICE TO COUNSEL by Judge Christina A. Snyder: This case has been assigned to the calendar of Judge Christina A. Snyder. Counsel are advised that the Court expects strict compliance with the provisions of the Local Rules and the Federal Rules of Civil Procedure. See document for details. (gk) (Entered: 10/29/2007) |
| 01/03/2008 | 5 | NOTICE of Filing Copies of Its Motion to Transfer Before Judicial Panel on Multidistrict Litigation filed by Defendant Wells Fargo Bank, N.A.. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 6 | NOTICE of Motion to Transfer Actions for Consolidated and Coordinated Pretrial Proceedings Pursuant to 28 USC 1407 filed by Defendant Wells Fargo Bank, N.A.. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 7 | NOTICE OF MOTION AND MOTION to Change Venue to Under 28 USC 1407 To Transfer For Consolidated and Coordinated Pretrial Proceedings filed by Defendant Wells Fargo Bank, N.A.. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 8 | EXHIBIT Filed filed by Defendant Wells Fargo Bank, N.A.. *EXHIBIT VOLUME in Support of* as to MOTION to Change Venue to Under 28 USC 1407 To Transfer For Consolidated and Coordinated Pretrial Proceedings7. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C1# 4 Exhibit C2# 5 Exhibit C3# 6 Exhibit C4)(Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 9 | MEMORANDUM in Support of MOTION to Change Venue to Under 28 USC 1407 To Transfer For Consolidated and Coordinated Pretrial Proceedings7 filed by Defendant Wells Fargo Bank, N.A.. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 10 | NOTICE of Appearance filed by attorney Robert D Phillips, Jr on behalf of Defendant Wells Fargo Bank, N.A. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/03/2008 | 11 | BRIEF filed by Defendant Wells Fargo Bank, N.A.. - - *Reasons Why Oral Argument Should Be Heard* - - regarding MOTION to Change Venue to Under 28 USC 1407 To Transfer For Consolidated and Coordinated Pretrial Proceedings7. (Phillips, Robert) (Entered: 01/03/2008) |

| 01/03/2008 | 12 | CORPORATE DISCLOSURE STATEMENT filed by Defendant Wells Fargo Bank, N.A. (Phillips, Robert) (Entered: 01/03/2008) |
|---|---|---|
| 01/03/2008 | 13 | CERTIFICATE OF SERVICE OF SERVICE filed by Defendant Wells Fargo Bank, N.A., re MOTION to Change Venue to Under 28 USC 1407 To Transfer For Consolidated and Coordinated Pretrial Proceedings7, Notice (Other)6, Corporate Disclosure Statement12, Notice of Appearance10, Brief (non-motion non-appeal)11, Memorandum in Support of Motion9, Exhibit (non-trial), Exhibit (non-trial)8 served on 01/03/08. (Phillips, Robert) (Entered: 01/03/2008) |
| 01/10/2008 | 14 | MINUTES OF In Chambers- Order Setting Scheduling Conference before Judge Christina A. Snyder : This matter is set for a Scheduling Conference on 3/24/08 at 11:00 a.m.. The Scheduling Conference will be held pursuant to FRCiv.P (16(b). (See document for further details) (yl) (Entered: 01/14/2008) |
| 01/15/2008 | 15 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: This filing is a copy of a Motion submitted to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8. This filing may have also been submitted as an attachment to the Notice of Filing Copies, document number 5: RE Notice of Motion of Wells Fargo Bank, N.A., to Transfer Actions for Consolidating and Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. Section 1407 filed 1/3/2008 6. (gk) (Entered: 01/15/2008) |
| 01/15/2008 | 16 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: Incorrect Document Type selected. Motion to Change Venue Event used in docketing this filing. This filing is a copy of a Motion submitted to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8: RE Motion of Wells Fargo, N.A. Under 28 U.S.C. Section 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings filed 1/3/2008 7. (gk) (Entered: 01/15/2008) |
| 01/15/2008 | 17 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: Miscellaneous Filings (Non Motion) - Exhibit (non-trial) Event used in docketing this filing. This filing is a copy of Exhibits in Support of Motion submitted to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8: RE Exhibit Volume in Support of Motion of Wells Fargo Bank, N.A. Under 28 U.S.C. Section 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings filed 1/3/2008 8. (gk) (Entered: 01/15/2008) |

| 01/15/2008 | 18 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: This filing is a copy of the Memorandum in Support of Motion submitted to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8: RE Memorandum in Support of Motion of Wells Fargo, N.A. under 28 U.S.C. Section 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings filed 1/3/2008 9. (gk) (Entered: 01/15/2008) |
|---|---|---|
| 01/15/2008 | 19 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: This filing is a copy of a submission to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, The Notice indicates a San Francisco address for attorney Phillips. The District Court docket reflects a Los Angeles address. If counsel would like his address of record changed on this case to San Francisco, he should submit a Notice of Change of Address: RE Notice of Appearance filed 1/3/2008 10. (gk) (Entered: 01/15/2008) |
| 01/15/2008 | 20 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: The Miscellaneous Filings (Non-Motion) - Brief (non-motion non-appeal) Event was used in docketing this filing. This is a copy of a submission to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8: RE "Reasons Why Oral Argument Should Be Heard" filed 1/3/2008 11. (gk) (Entered: 01/15/2008) |
| 01/15/2008 | 21 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: This is a copy of a submission to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8, on page one. Clerk has noted corporate parent: RE Corporate Disclosure Statement of Defendant Wells Fargo Bank, N.A. filed 1/3/2008 12. (gk) (Entered: 01/15/2008) |
| 01/15/2008 | 22 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents. The following deficiency was found: This is a copy of a submission to the Judicial Panel on Multidistrict Litigation. It lacks a proper title page with the title of the District Court, Local Rule 11-3.8(c); and the name, address, telephone and facsimile numbers, and e-mail address of the submitting attorney, Local Rule 11-3.8, on page one: RE Certificate of Service filed 1/3/2008 13. (gk) (Entered: 01/15/2008) |
| 03/06/2008 | 23 | ANSWER to Complaint - (Discovery)[1] *Answer of Defendant Wells Fargo Bank, N.A., to Plaintiffs' Complaint* filed by Defendant Wells Fargo Bank, N.A..(Phillips, Robert) (Entered: 03/06/2008) |

| 03/06/2008 | 24 | Certificate of Interested Parties filed by Defendant Wells Fargo Bank, N.A.. (Phillips, Robert) (Entered: 03/06/2008) |
|---|---|---|
| 03/07/2008 | 25 | PROOF OF SERVICE Executed by Plaintiff Juan Rodriguez, Josefina Rodriguez, upon Wells Fargo Bank, N.A. served on 2/15/2008, answer due 3/6/2008. The Summons and Complaint were served by personal service, by federal statute, upon registered agent. Due Dilligence declaration no. Original Summons not returned. (Dillon, Timothy) (Entered: 03/07/2008) |
| 03/07/2008 | 26 | Proof OF SERVICE filed by Plaintiff Juan Rodriguez, Josefina Rodriguez, served on Complaint, Summons, Initial Docs. (Dillon, Timothy) (Entered: 03/07/2008) |
| 03/13/2008 | 27 | STIPULATION to Continue Scheduling Conference from March 24, 2008 to May 19, 2008 Re: In Chambers Conference, 14 filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez.(Dillon, Timothy) (Entered: 03/13/2008) |
| 03/14/2008 | 28 | ORDER by Judge Christina A. Snyder re: Stipulation to Continue27. For good cause show, and based upon the stipulation of the parties, the Scheduling Conference now scheduled for 3/24/2008 at 11:00 a.m. (and related deadlines) shall be continued to 5/19/2008 at the same time and place. (mmu) (Entered: 03/17/2008) |
| 03/19/2008 | 29 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez.Motion set for hearing on 4/21/2008 at 10:00 AM before Judge Christina A. Snyder. (Dillon, Timothy) (Entered: 03/19/2008) |
| 04/04/2008 | 30 | MINUTES OF IN CHAMBERS ORDER held before Judge Christina A. Snyder: On the Courts own motion, the Court continues Plaintiffs Motion to Dismiss Pursuant to FRCP 41(a)(2) from April 21, 2008 to May 19, 2008 at 10:00 a.m. Furthermore, the Court advances the May 19, 2008 Scheduling Conference from 11:00 a.m. to *10:00 a.m., to be heard simultaneously with plaintiffs motion to dismiss. (bm) (Entered: 04/07/2008) |
| 04/07/2008 | 31 | StipContinueDismissHrg filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez, Defendant Wells Fargo Bank, N.A. (Attachments: # 1 Proposed Order ContinueDismissHearing)(Dillon, Timothy) (Entered: 04/07/2008) |
| 04/08/2008 | 32 | ORDER by Court continuing plaintiff's motion to dismiss from April 21, 2008 to June 9, 200829 (mmo) (Entered: 04/08/2008) |
| 04/15/2008 | 33 | TRANSFER ORDER from the Judicial Panel on Multidistrict Litigation, MDL 1930, transferring case to USDC, Northern District of California, and with the consent of that court, assigned to Judge Maxine M. Chesney for coordinated or consolidated pretrial proceedings with the actions pending there. Original manual file (documents numbered 1-3), certified copy of the transfer order and docket sheet sent. (MD JS-6. Case Terminated.) (gk) (Entered: 04/18/2008) |

| 04/18/2008 | 34 | Transfer Out MDL Case Transmittal Letter. Original manual file (documents numbered 1-3) and certified copies of the transfer order and civil docket sheet sent to USDC, Northern District of California at San Francisco, on 4/18/2008. Transferee court instructed to access our website through PACER for electronic filings. (gk) (Entered: 04/18/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/18/2008 15:14:45 | | | |
| **PACER Login:** | us3877 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-06780-CAS-AJW |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV07- 6780 CAS (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.



**SEND**

CLERK, U.S.
OCT 1 9
BY

---

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUAN RODRIGUEZ AND JOSEFINA RODRIGUEZ**<br><br>PLAINTIFF(S)<br><br>V.<br><br>**WELLS FARGO BANK**<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV07- 6780 CAS (AJWx)**<br><br><br>**NOTICE TO PARTIES OF ADR PILOT PROGRAM** |

Dear Counsel,

The district judge to whom the above-referenced case has been assigned is participating in an ADR Pilot Program.  All counsel of record are directed to jointly complete the attached ADR Pilot Program Questionnaire, and plaintiff's counsel (or defendant in a removal case) is directed to concurrently file the Questionnaire with the report required under Federal Rules of Civil Procedure 26(f).

Clerk, U.S. District Court

10/18/07

Date

By:  RHONDA MARSHALL

Deputy Clerk

DOCKETED ON CM
OCT 2 9 2007
BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| JUAN RODRIGUEZ AND JOSEFINA RODRIGUEZ | CASE NUMBER |
| --- | --- |
| PLAINTIFF(S) | **CV07- 6780 CAS (AJWx)** |
| V. | |
| **WELLS FARGO BANK** | **ADR PILOT PROGRAM QUESTIONNAIRE** |
| DEFENDANT(S). | |

(1) What, if any, discovery do the parties believe is essential in order to prepare adequately for a settlement conference or mediation? Please outline with specificity the type(s) of discovery and proposed completion date(s). Please outline any areas of disagreement int this regard. Your designations do not limit the discovery that you will be able to take in the event this case does not settle.

_____

_____

_____

_____

_____

_____

_____

(2) What are the damage amounts being claimed by each plaintiff? Identify the categories of damage claimed [e.g., lost profits, medical expenses (past and future), lost wages (past and future), emotional distress, damage to reputation, etc.] and the portion of the total damages claimed attributed to each category.

_____

_____

_____

_____

_____

_____

_____

_____

_____

ADR-9 (02/04)                    ADR PILOT PROGRAM QUESTIONNAIRE

(3) Do the parties agree to utilize a private mediator in lieu of the court's ADR Pilot Program?

Yes [ ]    No [ ]

(4) if this case is in category civil rights - employment (442), check all boxes that describe the legal bases of plaintiff claim(s).

[ ] Title VII                                      [ ] Age Discrimination

[ ] 42 U.S.C. section 1983                        [ ] California Fair Employment and Housing Act

[ ] Americans with Disabilities Act of 1990       [ ] Rehabilitation Act

[ ] Other _____

_____

_____

I hereby certify that all parties have discussed and agree that the above-mentioned responses are true and correct.


_____              _____

Date                                   Attorney for Plaintiff  (Signature)


                                       _____

                                       Attorney for Plaintiff  (Please print full name)


_____              _____

Date                                   Attorney for Defendant  (Signature)


                                       _____

                                       Attorney for Defendant  (Please print full name)



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

April 18, 2008

Clerk, United States District Court
Northern District of California
Phillip Burton U. S. Courthouse, 16th Floor
450 Golden Gate Avenue
San Francisco, CA 94102-3434

Re:  MDL _1930_____    In Re: _Wells Fargo Mortgage Lending Practices Litigation_

    Transfer of our Civil Case No. _CV 07-06780 CAS (AJWx)_____

    Case Title: _Juan Rodriguez, et al. v. Wells Fargo Bank, N.A._____

Dear Sir/Madam:

    An order having been made by the Judicial Panel on Multi-district Litigation transferring/ remanding the above-numbered case to your district, we are transmitting herewith our entire original file in the action, together with a copy of the order and a certified copy of the docket. Please acknowledge receipt of same and indicate below the case number you have assigned to this matter on the enclosed copy of this letter and return it to our office. Thank you for your cooperation.

Very truly yours,

\*\*\* Please use your Court's PACER account and
    password to access all efiling documents
    to our website:  h55p://ecf.cacd.uscourts.gov.
Thank you.

Clerk, U.S. District Court

By _G. Kami_____    _(213) 894-0747_
Deputy Clerk

cc:  *All counsel of record*
    *Clerk, MDL Panel*

---

## TO BE COMPLETED BY RECEIVING DISTRICT

Receipt is acknowledged of the documents described herein and, if not already assigned,  we have assigned this matter the following case number: _____.

Clerk, U.S. District Court

By _____
Deputy Clerk

Timothy P. Dillon (CSB No. 123953)
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205
Laguna Beach, California 92651
(949) 376-2800
(949) 376-2808 Facsimile

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| JUAN RODRIGUEZ and JOSEFINA RODRIGUEZ, individually, and on the class of all others similarly situated PLAINTIFF(S) | CV-07-6780-CAS (AJWx) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| DEFENDANT(S). | **SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Timothy P. Dillon _____, whose address is:

Timothy P. Dillon, Esq.
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205
Laguna Beach, California 92651

an answer to the ☒ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: ____10/18/07____    By: ____Rhonda Marshall____
                                Deputy Clerk

*(Seal of the Court)*

DOCKETED ON CM

OCT 29 2007

BY ___ 067

CV-01A (01/01)                    SUMMONS

instrument is a true a~
of the original on fil~ ~~. ~~y ~~~~~.
ATTEST:
RICHARD W. W~~~~~~G
Clerk, U.S. Distr~~~ C~~~~
Northern District ~~ C~~~~~~~ia
By ~~~~~~~~~~~~~
Date ~~4-10-08~~

JSC

**A CERTIFIED TRUE COPY**

ATTEST

By Mecca Thompson on Apr 10, 2008

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**Apr 10, 2008**

FILED
CLERK'S OFFICE

IN RE: WELLS FARGO MORTGAGE
LENDING PRACTICES LITIGATION

Juan Rodriguez, et al -v- Wells Fargo Bank N.A.
CV07-6780 CAS (AJWx)

**TRANSFER ORDER**

MDL No. 1930

**FILED**

APR 10 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**Before the entire Panel**[*]: Defendant Wells Fargo Bank, N.A. (Wells Fargo) has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in either the Northern District of Illinois or Southern District of Iowa. Plaintiffs in all four actions agree that centralization is appropriate. Plaintiff in the Illinois action supports selection of the Illinois district as transferee forum, while plaintiffs in the three California actions suggest selection of the Northern District of California as transferee district.

This litigation presently consists of four actions listed on Schedule A and pending in three districts as follows: two actions in the Northern District of California and one action each in the Central District of California and the Northern District of Illinois.[1]

On the basis of the papers filed and hearing session held, we find that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share factual questions relating to whether Wells Fargo engaged in discriminatory residential lending practices, including the imposition of discretionary fees/charges which increased the cost of financing resulting in higher loans for minority borrowers than similarly situated non-minority borrowers. Centralization under Section 1407 will eliminate duplicative discovery; avoid inconsistent pretrial rulings, especially on the issue of class certification; and conserve the resources of the parties, their counsel and the judiciary.

We further find that the Northern District of California is an appropriate transferee district for this litigation, because (1) three of the five known actions–including the first-filed action–are pending in this district; and (2) Wells Fargo is headquartered in San Francisco and relevant documents and witnesses could be found there.

[*] Judge Scirica took no part in the disposition of this matter.

[1] The Panel has been notified that one other related action has recently been filed in the Northern District of California. This action will be treated as a potential tag-along action. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

I hereby attest and certify on ~~4/18/08~~
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

By ~~~~~~~~~ Deputy

- 2 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Northern District of California are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Maxine M. Chesney for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION

John G. Heyburn II
Chairman

| | |
|---|---|
| D. Lowell Jensen | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

**IN RE: WELLS FARGO MORTGAGE**
**LENDING PRACTICES LITIGATION**        MDL No. 1930

### SCHEDULE A

Central District of California

Juan Rodriguez, et al. v. Wells Fargo Bank, N.A., C.A. No. 2:07-6780

Northern District of California

Nancy Jeffries, et al. v. Wells Fargo Bank, N.A., et al., C.A. No. 3:07-3880
Gilbert Ventura, Sr., et al. v. Wells Fargo Bank, N.A., C.A. No. 3:07-4309

Northern District of Illinois

Judy Williams v. Wells Fargo Bank, N.A., C.A. No. 1:07-6342

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888
http://www.jpml.uscourts.gov

April 10, 2008

Honorable Maxine M. Chesney
U.S. District Judge
Phillip Burton U.S. Courthouse
19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102-3434

Re: MDL No. 1930 -- IN RE: Wells Fargo Mortgage Lending Practices Litigation

Dear Judge Chesney:

Attached are: (i) a letter directed to the Clerk of your district advising that the above-referenced litigation has been transferred to you under 28 U.S.C. § 1407 and (ii) a copy of the related transfer order.

As you may know, all multidistrict litigation statistics are maintained by this office and submitted to the Administrative Office for inclusion in the <u>Annual Report of the Director</u>. Consequently, once yearly we will verify with your Clerk the actual number and status of the actions assigned to you, including actions added to the docket either by transfer of tag-along actions or additional related actions originally filed in your district. A copy of our inquiry to your Clerk will be directed to you for your information.

We have a Citrix remote access server for use by transferee courts in accessing our database for information regarding assigned multidistrict litigation. The server can be accessed by you if you have a Windows based personal computer with DCN access. Our database contains transferor and transferee information for each action transferred by the Panel and actions filed in your district. Counsel identified in the database are those who made appearances in the transferor districts, counsel who filed appearances before the Panel and counsel assigned by you as liaison counsel. Also, each individual action is tracked from the date of transfer to termination either by dismissal, remand to transferor district, remand to state court, etc. If you are interested in utilizing the server, please feel free to contact our Systems Administrator, Al Ghiorzi, to establish a password and receive instructional information.

Your attention is directed to Rule 7.6 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 436-38 (2001), dealing with termination and remand of actions transferred by the Panel. Specifically, the rule states, in part, the following:

- 2 -

    (a) Actions terminated in the transferee district court by valid judgment, including but not limited to summary judgment, judgment of dismissal and judgment upon stipulation, shall not be remanded by the Panel and shall be dismissed by the transferee district court....

    (b) Each action transferred only for coordinated or consolidated pretrial proceedings that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial....

    (c) The Panel shall consider remand of each transferred action or any separable claim, cross-claim, counterclaim or third-party claim at or before the conclusion of coordinated or consolidated pretrial proceedings on...suggestion of the transferee district court....

We will promptly act upon any written notices from you that remand of actions or separable claims transferred under Section 1407 is appropriate.

If you appoint liaison counsel, in your pretrial order outlining liaison counsel's responsibilities, please consider reinforcing Panel Rule 5.2(e), which provides:

    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule [Panel Rule 5.2, Service of Papers Filed Before the Panel] shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

Feel free to contact this office if we may be of assistance to you.

                Very truly,

                Jeffery N. Lüthi
                Clerk of the Panel

                By

                Mecca S. Thompson
                Docket Specialist

Attachments (Separate Documents)

cc:    Clerk, United States District Court
        for the Northern District of California

                              JPML Form 23

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:       [202] 502-2888
http://www.jpml.uscourts.gov

April 10, 2008

Richard W. Wieking, Clerk
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Re: MDL No. 1930 -- IN RE: Wells Fargo Mortgage Lending Practices Litigation

Dear Mr. Wieking:

Attached as a separate document is a certified copy of a transfer order issued today by the Judicial Panel on Multidistrict Litigation in the above-captioned matter. The order is directed to you for filing. Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 428 (2001), states "A transfer or remand pursuant to 28 U.S. C. § 1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee district."

Today we are also serving an information copy of the order on the transferor court(s). The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred [transferor court]."

Rule 1.6(a), pertaining to transfer of files, states "the clerk of the transferor district court shall forward to the clerk of the transferee district court the complete original file and a certified copy of the docket sheet for each transferred action." **With the advent of electronic filing, many transferee courts have found that it is not necessary to request the original file. Some transferee courts will send their certified copy of the Panel order with notification of the newly assigned transferee court case number and inform the transferor courts that they will copy the docket sheet via PACER. Others may request a certified copy of the docket sheet and a copy of the complaint (especially if it was removed from state court). You should be specific as to the files you would like to receive from the transferor courts and if no files will be necessary, you should make that clear. Therefore, Rule 1.6(a) will be satisfied once a transferor court has complied with your request.**

You may find Chapter 7 of Volume 4 of the Clerks Manual, United States District Courts helpful in managing the your MDL docket.

The Panel Clerk's Office maintains the only statistical accounting of multidistrict litigation traffic in the federal courts. These statistics are used by the Administrative Office of the United States Courts and the

- 2 -

Judicial Conference. Therefore, your cooperation in keeping the Panel advised of the progress of this litigation would be appreciated.

We are particularly interested in receiving the docket numbers assigned to each transferred action by your court; the caption and docket numbers of all actions originally filed in your district; and copies of orders regarding appointment of liaison counsel, settlements, dismissals, state court remands, and reassignments to other judges in your district.

Your attention is also directed to Panel Rule 7.6, regarding termination and remand of transferred actions. Upon notification from your court of a finding by the transferee judge suggesting to the Panel that Section 1407 remand of a transferred action is appropriate, this office will promptly file a conditional remand order.

Attached to this letter, for your information, is a copy of the Panel Attorney Service List and a listing of the transferor court clerks with respect to this order.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _____
Mecca S. Thompson
Docket Specialist

Attachments (Transfer Order is a Separate Document)

cc:    Transferee Judge: Judge Maxine M. Chesney
       Chief Judge Transferee District: Judge Vaughn R. Walker

JPML Form 33

**Judicial Panel on Multidistrict Litigation - Panel Attorney Service List**

**for**

**MDL 1930 - IN RE: Wells Fargo Mortgage Lending Practices Litigation**

**\*\*\* Report Key and Title Page \*\*\***

Please Note: This report is in alphabetical order by the last name of the attorney. A party may not be
represented by more then one attorney. See Panel rule 5.2(c).

**Party Representation Key**
   \* Signifies that an appearance was made on behalf of the party by the representing attorney.
   # Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
   All counsel and parties no longer active in this litigation have been suppressed.

**This Report is Based on the Following Data Filters**
   Docket: 1930 - Wells Fargo Mortgage Lending Practices
   For Open Cases

---

**IN RE: WELLS FARGO MORTGAGE
LENDING PRACTICES LITIGATION**                           MDL No. 1930

### INVOLVED CLERKS LIST

Michael W. Dobbins, Clerk
Everett McKinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, IL 60604
**Docketing ILND/ILND/07/USCOURTS**

Sherri R. Carter, Clerk
G-8 U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012
**MDLClerk/CACD/09/USCOURTS**

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

April 10th, 2008

Central District of California
312 North Spring Street
Los Angeles, CA 90012-4701

Re:    MDL 1930 In Re: Wells Fargo Mortgage Lending Practices Litigation

Title of Case(s)                                          Your Case Number(s)
Juan Rodriguez, et al. v. Wells Fargo Bank, N.A.          C.A. No. 2:07-6780

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Maxine M. Chesney for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the original record and a certified copy of the docket entries in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: MDL Clerk

If the case is an electronic case filing please do one of the following: 1) electronically transfer the case via ECF by contacting our Automation Department at ecfhelpdesk@cand.uscourts.gov; 2) e-mail the PDF documents, as separate PDF files, including a PDF copy of the docket sheet to SFmdl_clerk@cand.uscourts.gov; 3) provide the PDF documents on a disc; or 4) provide us with a temporary log in and a password to directly access your database to expedite the downloading of the PDF files we need and/or require, We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

By:
Deputy Clerk

Encl.